PEOPLE v̇ ZACHERY DAVIS

1. CRIMINAL LAW—LINEUP—FAIRNESS.

The trial court properly denied defendant's motion for a new trial on the grounds that the lineup was unfair and that he was deprived of the effective assistance of counsel when his attorney failed to raise the issue of the lineup's fairness where, at an evidentiary hearing concerning the composition of the lineup, a police officer explained why the other men were placed in it with defendant, a photograph of the lineup was introduced into evidence, defendant's lawyer, who was present, consented to the composition of the lineup, and the robbery victim, when he walked into the lineup room, immediately recognized and identified defendant.

2. ROBBERY—WEAPONS—EVIDENCE.

A handgun found under a seat of the automobile defendant was driving when arrested was sufficiently tied in to defendant to warrant its admission at his trial for armed robbery, even though the robbery victim could not identify the gun as the weapon used by the robber, where one of defendant's companions the night of the robbery testified that he saw defendant use the gun to rob the victim while another companion testified that defendant had a gun in his possession at the time the robbery was committed and that defendant was carrying it to use in committing a robbery.

3. CRIMINAL LAW—SENTENCE—OTHER OFFENSES.

A sentencing judge may not take into consideration offenses denied by the defendant without proof that defendant had in

REFERENCES FOR POINTS IN HEADNOTES

[1] 29 Am Jur 2d, Evidence §§ 371–373.

Admissibility of evidence as to extrajudicial or pretrial identification of accused, 71 ALR2d 449.

Admissibility of evidence of lineup identification as affected by allegedly suggestive lineup procedures, 39 ALR3d 487.

[2] 29 Am Jur 2d, Evidence § 288.

[3] 21 Am Jur 2d, Criminal Law §§ 527, 533, 546.

Court's right, in imposing sentence, to hear evidence of, or to consider, other offenses committed by defendant, 96 ALR2d 768.

fact committed them; therefore, defendant's case is remanded for resentencing where the judge considered at time of sentencing the claim that defendant had participated in other holdups, which defendant had denied, without proof that defendant had in fact committed those offenses.

Appeal from Recorder's Court of Detroit, Joseph E. Maher, J. Submitted Division 1 October 14, 1971, at Detroit. (Docket No. 10397.) Decided July 3, 1972.

Zachery A. Davis was convicted of armed robbery. Defendant appeals. Affirmed but case remanded for resentencing.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Robert A. Reuther,* Assistant Prosecuting Attorney, for the people.

*Benjamin F. Blake,* for defendant on appeal.

Before: LEVIN, P. J., and R. B. BURNS and J. H. GILLIS, JJ.

LEVIN, P. J. The defendant, Zachery A. Davis, appeals his conviction by a jury of armed robbery. MCLA 750.529; MSA 28.797.

He contends that a police lineup was "unnecessarily suggestive and conducive to irreparable mistaken identification",[1] that the failure of his trial lawyer to challenge the in-court identification testimony of a witness who viewed him in the lineup was a major mistake depriving him of the effective assistance of counsel, that a handgun was improp-

[1] *Stovall v Denno,* 388 US 293, 302; 87 S Ct 1967, 1972; 18 L Ed 2d 1199, 1206 (1967).

erly admitted into evidence, and that the judge erred in taking into consideration at the time of sentencing other alleged similar offenses which were not proved.

We find no error in the trial, but remand for resentencing because the judge did err in taking into consideration impermissible factors when sentencing.

## I.

Davis's appellate lawyer filed a motion for a new trial in which he advanced the claims that the lineup was unfair and that Davis was deprived of the effective assistance of counsel when his trial lawyer failed to raise that issue. The judge ordered an evidentiary hearing at which testimony was taken concerning the composition of the lineup.

At the hearing, a police officer explained why the lineup was composed of the men who were placed in it with Davis and a photograph of the lineup was introduced in evidence. Davis was represented by a lawyer at the lineup; the officer testified that Davis's lawyer consented to the composition of the lineup. The officer also said that when the victim of the robbery walked into the room where the lineup was being held he immediately recognized and identified Davis.

The judge denied the motion for a new trial for lack of merit. We have reviewed the record, including the photograph, and the Court is of the opinion that the trial judge's finding on this issue should be affirmed.

Having concluded that the lineup was not unfair, we further conclude that the failure of Davis's trial lawyer to object to the lineup as unfair was not consequential, and therefore did not deprive him of the effective assistance of counsel.

## II.

We also reject Davis's contention that the judge erred in admitting a handgun in evidence. While the victim could not identify the gun as the weapon used by the man who robbed him, one of Davis's youthful companions testified that he saw Davis use the gun to rob the victim. Another youth testified that Davis had a gun in his possession at the time the robbery was committed and that Davis was carrying it to use in committing a robbery. A police officer testified that the gun was found under a seat of the automobile Davis was driving when he was arrested. Clearly, the gun was sufficiently tied in to Davis to justify its admission in evidence against him. See *People v James,* 36 Mich App 550, 554 (1971).

## III.

During the allocation at the time of sentencing, the judge declared that on the night the crime was committed four persons were robbed "on that street of crime wave, there were during that weekend which this group was involved, allegedly you were one, that went anywhere up to 250 holdups that were committed. Now, you are being charged with another armed robbery that has yet to come to trial in spite of all these people telling us this, you sit here on the witness stand in front of me and deny any connection with the crime indicating to me that if you are guilty, you're lying".

In response Davis protested his innocence saying that the youthful witnesses against him were "hiding something or covering something up for someone", that he knew nothing about the crime, did not have a conviction record, was steadily employed and had no reason to commit such a crime.

The judge said that he believed the testimony of the victim who was one of the best witnesses he had ever heard and that he did not believe Davis. The judge added, "So, evidently, from that I can see you have no remorse for what you did, but attempt to get to this court some doubt in my mind whether you did it. I haven't any. I believe the evidence as the jury did."

Davis responded again protesting his innocence.

The judge then said: "You show no remorse, and in my mind, I feel that you were guilty. And it only shows here a case that you're trying to weasel out of something by lying about it. You put me in a position to believe that there is no remorse at all. I would want to see some if I am going to sentence you."

Davis responded that he had lived for 26 years without a record and asked, "Why all of a sudden one night should I start robbing?"

The judge said, "I don't know. Narcotics?" Davis responded, "I am not a narcotic addict".

The judge said: "In this particular affray, they say there were upwards of 250 holdups committed, four right in the period of that holdup that you were found guilty of, four at one time, one man testified that you came back to the car with three or four wallets in your possession".

Davis responded that at the time of his arrest he had only $3 with him. The judge said that "doesn't prove anything. The man only had a couple of dollars in his wallet. People on the street don't carry much money any more."

Davis responded that the only thing he could say was, "I am innocent and with this inner feeling makes me feel real good. I am going to spend time in prison, well, I, I will use it—." The judge interrupted, "You are going to spend time,

the only question is what is going to change your attitude toward life".

The judge said that he presumed there was another charge pending against Davis and he was at a loss to know what to do with a person like Davis. "This is what gets me when I want to sentence him, if he would come before the court with some remorse, but he stands there and definitely says he did not do this. I am wondering whether or not, what, what will happen when he reaches society again." The judge then sentenced Davis to serve a term of 20 to 40 years in state prison.

After Davis was sentenced in this case, he was tried and acquitted on a charge that he had committed another robbery about 12 hours after the robbery for which he was convicted in this case.

In *People v Snow*, 26 Mich App 510, 515 (1970), *aff'd* 386 Mich 586 (1972), we said:

"The traditional unwillingness of appellate courts to intrude upon the sentencing process yields when sentence is based upon impermissible considerations, or is passed in violation of statute."[2]

In *Snow* we remanded for resentencing because the record showed that defendant Snow had been sentenced in accordance with a policy designed to induce guilty pleas by imposing heavier sentences on those who demand a jury trial.

In *People v Earegood,* 383 Mich 82, 85 (1970),

---

[2] See *United States v Daniels,* 446 F2d 967, 972 (CA 6, 1971), where the United States Court of Appeals for the Sixth Circuit found that the sentence was not in accordance with the "implied legislative will to impose a lesser sentence where appropriate". The Court directed that a member of the Jehovah's Witnesses faith, who had violated the selective service law, be placed on probation, rather than sentenced to prison, on condition that he perform work contributing to the maintenance of the national health, safety or interest during 24 months of the 25-month probationary period.

the Michigan Supreme Court remanded for resentencing saying:

"[I]t is impermissible for a judge in imposing sentence to take into consideration as a factor in determining the term of the sentence the fact that defendant pled or waived a jury at the last minute."

In *Townsend v Burke,* 334 US 736, 741; 68 S Ct 1252, 1255; 92 L Ed 1690, 1693 (1948), the United States Supreme Court remanded for resentencing where it appeared that the defendant was sentenced "on the basis of assumptions concerning his criminal record which were materially untrue". The Court declared: "Such a result, whether caused by carelessness or design, is inconsistent with due process of law, and such a conviction cannot stand".

In *Williams v New York,* 337 US 241, 244; 69 S Ct 1079, 1081–1082; 93 L Ed 1337, 1340 (1949), the United States Supreme Court indicated that a sentencing judge may consider other criminal conduct not resulting in conviction in imposing sentence. *Williams* was decided in 1949 and has been the subject of considerable criticism.[3] In all events, the *Williams* Court stressed that in the case before it, "The accuracy of the statements made by the judge as to appellant's background and past practices was not challenged by appellant or his counsel, nor was the judge asked to disregard any of them or to afford appellant a chance to refute or discredit any of them by cross-examination or otherwise".

In *United States v Weston,* 448 F2d 626 (CA 9, 1971), the Court of Appeals for the Ninth Circuit

[3] See Notes: *Right of Criminal Offenders to Challenge Reports Used in Determining Sentence,* 49 Colum L Rev 567 (1949); *Right of Offender to be Informed of Presentence Information in Open Court,* 34 Minn L Rev 470 (1950).

remanded for resentencing where it appeared that the judge took into consideration unsworn affidavits detailing other crimes. The Court in an extensive opinion reviewed the case law since *Williams* and stated that resentencing had been ordered in cases where the sentencing judge (1) relied on evidence obtained in violation of constitutional rights, (2) imposed a greater punishment because the defendant chose to be tried by a jury rather than plead guilty or after a trial refused to admit his guilt and repent, (3) relied on evidence of prior convictions that was false, or mistakenly believed that the presentence report showed prior convictions when it did not, and (4) where there exists a reasonable probability that the trial judge imposed a heavier sentence because of defendant's prior conviction in a case where he was not represented by counsel.

The Ninth Circuit said in *Weston* that although it was not prepared to go as far as the Fourth Circuit[4] or the American Bar Association[5] and hold that evidence of other criminal conduct not resulting in a conviction may not be considered, that where a defendant protests his innocence of the

[4] The United States Court of Appeals for the Fourth Circuit recently declared that "no conviction or criminal charge should be included in the [presentence] report, or considered by the court, unless referable to an official record". See *Baker v United States,* 388 F2d 931, 934 (CA 4, 1968).

[5] The commentary accompanying the American Bar Association Project on Standards for Criminal Justice, Standards Relating to Probation, § 2.3, p 37, expresses the view that a presentence report should include only those charges which have resulted in a conviction:

"Arrests, juvenile dispositions short of an adjudication, and the like, can be extremely misleading and damaging if presented to the court as part of a section of the report which deals with past convictions. If such items should be included at all—and the Advisory Committee would not provide for their inclusion—at the very least a detailed effort should be undertaken to assure that the reader of the report cannot possibly mistake an arrest for a conviction."

other offenses the truth of the claim that he committed the other offenses must be established with some reliability.[6] The Court declared that a defendant did not have the burden of proving a negative or disproving the asserted other offense. Referring to *Townsend v Burke, supra,* where the United States Supreme Court had "made it clear that a sentence cannot be predicated on false information", the Court said, p 634:

"We extend it but little in holding that a sentence cannot be predicated on information of so little value as that here involved. A rational penal system must have some concern for the probable accuracy of the informational inputs in the sentencing process."

In *People v Perine,* 7 Mich App 292, 294–295 (1967), in an opinion by Judge QUINN, we earlier reached the same conclusion. It appeared that the sentencing judge "took into consideration other alleged similar offenses which were denied by the defendant to have been committed without proof that they had in fact been committed". Acknowledging that we have no supervisory control over the punishment imposed when that punishment is within the statutory maximum, we declared that a sentencing judge may not take into consideration offenses denied by the defendant without proof that they had in fact been committed.[7]

---

[6] In *Weston,* the objected-to information consisted of the opinion of unidentified persons in the Bureau of Narcotics and Dangerous Drugs, and the unsworn statement of one agent that an informer had given him some substantiating information.

[7] Similarly, see:

*Noland v People,* 485 P2d 112 (Colo, 1971), where the Supreme Court of Colorado held that it was error to take into consideration at the time of sentencing unproven charges where the defendant's lawyer was not permitted to point out to the court that matters not in evidence were being considered.

*Baker v State,* 3 Md App 251, 258–259; 238 A2d 561, 566 (1968), where the Court of Special Appeals of Maryland remanded for resen-

The recent observations of the Michigan Supreme Court in *People v Malkowski,* 385 Mich 244, 249 (1971), are relevant:

"It is vitally important to the defendant and to the ends of justice that the sentence be based upon accurate information."

We conclude that the sentencing judge in this case erred in considering at the time of sentencing the claim that Davis had participated in other holdups, which Davis denied, without proof that he had in fact committed those offenses.

Affirmed and remanded for resentencing.

All concurred.

tencing saying that it was impermissible to consider in fixing the length of the sentence similar other charges of which the defendant had not been convicted.

*United States v Latimer,* 415 F2d 1288, 1290 (CA 6, 1969), where the United States Court of Appeals for the Sixth Circuit remanded for resentencing because it appeared that the sentencing judge had taken into consideration information indicating that the defendant had committed a greater offense. The defendant had been convicted of two counts of forcibly resisting and impeding with a deadly weapon FBI agents in the performance of their duties. The judge had been informed that the defendant had pulled the trigger of a loaded pistol while pointing it at an FBI agent and the bullet had misfired. In remanding for resentencing the Court of Appeals said that if the judge's impression of what had occurred was correct, then the defendant was guilty of a more serious crime than the crime of which he had been convicted: "If the Government had any such information, the time and place to present it was in open court during the course of the trial. To disclose it to the sentencing court ex parte after the judgment of conviction gives rise to the possibility that the District Court may have sentenced Latimer for a more serious offense than the one for which he was convicted and that defense counsel was given no opportunity to rebut it."

*People v Butler,* 36 Mich App 615 (1971), is distinguishable because, in contrast with this case (and *Weston* and *Perine),* it does not appear that Butler protested his innocence.